UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
AT CINCINNATI
CIVIL CASE NO. 10-759-SSB-JGW

JULIUS CROSSTY                                                              PETITIONER

V.

WARDEN, LEBANON CORRECTIONAL
INSTITUTION                                                                  RESPONDENT

**REPORT AND RECOMMENDATION[1] THAT THIS PETITION FOR A WRIT OF HABEAS CORPUS BE DENIED**

In October 2010, petitioner Julius Crossty, with the assistance of counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. 1. In January 2011, the respondent filed a return of the writ. Doc. 5. Despite being given an opportunity to do so [Doc. 2], Crossty has not filed a reply. Consistent with local practice, the matter has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b).

**I. Factual and Procedural Background**

As summarized by the Ohio Court of Appeals for the Twelfth Appellate District, the relevant underlying facts are as follows:

> Appellant and his girlfriend, Carlena Reece, had a sporadic relationship over an approximately 15-year period, but never married. Appellant is the father of two boys, ages eight and nine at the time of the incident. Reece is the mother of appellant's older son. In 2003, appellant obtained legal custody of both boys and served as the primary caregiver and guardian for most of their lives. Appellant and Reece last separated in the spring of 2006, but would often see each other. In September, appellant lost his job. On November 27, 2006, Reece stayed overnight at appellant's home. That night, the pair had a conversation about

---

[1] **Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation**

Reece's prior relationships with other men.  The following morning, appellant was scheduled to meet with officials at the Government Services Center in Hamilton to apply for unemployment assistance.  Appellant and Reece left his home separately and went to the Government Services Center to help him complete paperwork.

{¶ 3} Before filling out the paperwork, appellant and Reece left the building.  According to Reece, appellant told her that he believed his brother was in trouble and that he had to leave.  According to appellant, the pair left because Reece propositioned him for sex.  The pair returned to appellant's house in separate cars.  Upon arrival, appellant carried Reece upstairs to the second-floor bedroom because she had a splint on her right leg.  Reece contends that he carried her to the second floor to use the bathroom, while appellant testified that he laid her on the bed, intending to have sex.  Appellant testified that he went downstairs to retrieve condoms and, when he returned, Reece was in the bathroom plucking her eyebrows.  He then heard her cell phone, which was in her purse on the bed.  Appellant then claimed he opened the purse and found letters postmarked from prison.  He took the letters downstairs and read them.  The letters were from appellant's friend, Donnie White, a prison inmate.  The letters concerned Reece's prior sexual conduct with White and described White's plans to be with Reece upon his release.  Appellant testified that White was "like a brother" to him and they had been friends since childhood.  Appellant stated that this was the first time that he heard about Reece and White's relationship because Reece had not mentioned it the prior evening.

{¶ 4} Appellant testified that he returned upstairs and confronted Reece about the letters.  Reece told him the letters meant nothing. She then became angry and admitted having sex with White.  Appellant claims that Reece lunged at him with tweezers and attempted to run from the bathroom.  Appellant chased her and cut her with a box cutter.

{¶ 5} According to Reece, appellant's actions were unprovoked.  She testified that, while she was in the bathroom, appellant "launched" at her, hit her from behind, kicked her into the bedroom and sliced her left leg in two places with a box cutter.  She asked appellant to take her to the hospital, but he told her to shut up. According to Reece, appellant told her she would bleed to death and that they all were going to die together, including the boys.  Appellant placed Reece on the mattress in the bedroom, wrapped a phone cord around her leg, wrapped her leg in a towel, applied an ace bandage and a heating pad, and covered her with blankets.

{¶ 6} The boys arrived home from school around 4:00 p.m.  Appellant instructed them to go upstairs and say "hi" to Reece.  According to the boys, Reece did not appear well.  Then appellant gave the boys several small, white pills to swallow.

> Later, appellant called his brother to take Reece to the hospital. Before his brother arrived, appellant pulled the kitchen stove from the wall, turned the gas off, and disconnected the gas line, although he did not turned [sic] the gas back on. His brother arrived around 6:30 p.m. Appellant told his brother that he did not want to live and wished to kill himself. His brother called 9-1-1. Appellant left with the two boys before the police and paramedics arrived. Reece was taken to the hospital, where she had surgery to repair the wounds. One of the three arteries in her leg had been severed and could not be repaired. Her Achilles tendon was also lacerated.
>
> {¶ 7} Appellant initially drove the boys to a field near their home. Appellant placed one end of a garden hose into the exhaust pipe and the other end inside the car. Appellant claimed that he did not start the car with the boys inside, but appellant's younger son testified that the car remained running and the car began to smell like smoke. The son further claimed that he began to get a headache and the boys took a nap. In the morning, appellant transported the children by bicycle to an abandoned house two blocks away. The children testified that they napped, ate, and they cried with their father. Appellant testified that he returned to the car to retrieve their suitcases and decided to kill himself. He started the car, but nothing came through the hose, so he pushed a knit cap into the tailpipe, but still nothing came through. Appellant returned to the abandoned house. When the police discovered appellant's abandoned vehicle they noted that the hose was twisted and crinkled.
>
> {¶ 8} At the house, appellant unsuccessfully tried to reach his brother to pick up the children, so he called their football coach. The boys sat on the back porch waiting, while appellant went inside the abandoned home and took the cap off the gas line in the house, once again, intending to commit suicide, but then returned to his boys. The football coach arrived and appellant lifted them over the fence. Appellant was apprehended by police shortly thereafter.

Doc. 5-12, also available at *State v. Crossty*, 2009 WL 1655495, at *1-2 (Ohio Ct.App. June 15, 2009).[2]

In December 2007, a Butler County, Ohio Court of Common Pleas jury found petitioner guilty of three counts of attempted murder and one count of felonious assault. Doc. 5-3. Prior to being sentenced, petitioner filed a motion for a new trial under Ohio R. Crim. P. 33. Doc. 5-4.

---

[2]Petitioner does not contest these facts in his § 2254 petition.

3

The motion was based upon alleged misconduct in the prosecutor's closing argument. The trial court denied the motion for a new trial [Doc. 5-6] and sentenced petitioner to a total of twenty-six years' imprisonment. Doc. 5-7. Petitioner then filed a direct appeal. Doc. 5-8.

Petitioner raised three main arguments on appeal. First, he argued the trial court erred by curtailing his counsel's cross-examination of Reece. Second, Petitioner argued the trial court erred by preventing him from testifying regarding letters exchanged between Reece and White. Third, Petitioner argued the trial court erred by denying his motion for a new trial based upon prosecutorial misconduct. Doc. 5-9.

The Twelfth District of the Ohio Court of Appeals affirmed. *See* 2009 WL 1655495. That court held that the trial court did not abuse its discretion by refusing to permit petitioner to testify about the contents of letters exchanged by Reece and White because "the contents of the letters are immaterial to appellant's defense since words alone are not sufficient to prove provocation." *Id.* at * 3. The Twelfth District concluded that the trial court did not err in curtailing petitioner's counsel's cross-examination of Reece because "the contents of the letters and details of Reece's sexual conduct with White were irrelevant to appellant's trial." *Id.* at *5. Further, the appellate court held that the trial court's statements used to curtail petitioner's cross-examination of Reece "did not improperly bolster Reece's testimony or contribute to her credibility. The trial court was attempting to limit counsel's cross-examination to relevant matters . . . ." *Id.*.

Finally, the appellate court held that the trial court did not err in overruling petitioner's motion for a new trial. The court concluded that the trial court issued a proper curative instruction after the prosecutor in closing argument urged the jury to consider petitioner's

4

previous felony conviction, even though that curative instruction was not given immediately after petitioner's counsel's objection. *Id.* at *6.  The Twelfth District Court of Appeals agreed with petitioner that the prosecutor had made improper comments in closing argument, such as saying "I don't care" about various pieces of evidence, but that it could only conduct plain error review because petitioner's "counsel failed to object to the remaining complaints against the prosecutor; waiving any challenge except for plain error." *Id.*  The appellate court concluded that plain error relief was not mandated because the evidence against petitioner was "overwhelming" and the improper comments did not change the outcome of the trial. *Id.* at *7.

Petitioner sought further review from the Ohio Supreme Court [Doc. 5-13], but in November 2009 that court denied leave to appeal because it concluded the appeal did not involve any "substantial constitutional question[s]." Doc. 5-15. *See also State v. Crossty*, 915 N.E.2d 1254 (Table) (Ohio 2009).  In October 2010 petitioner filed the pending § 2254 petition. Doc. 1.

**II.  Analysis**

**A.  Petitioner's Claims for Relief**

Petitioner raises four claims for relief, though his terse petition does not cite to authority to support them.  First, he contends his right to due process was violated when the trial court prevented him from testifying about sexually-oriented letters exchanged by Reece and White.[3] Petitioner contends his discovery of the letters, combined with Reece's attack, "formed the basis

---

[3]Apparently there are two sets of letters, one of which had been destroyed before trial. Petitioner sought to testify about his recollection of the content of the letters which had been destroyed and sought to cross-examine Reece about the contents of the letters which had not been destroyed.

for his defense that he acted in sudden passion or in a sudden fit of rage . . . ." Doc. 1, p. 3. Second, petitioner makes a related argument that the trial court denied his right to due process by "improperly terminat[ing] cross-examination of Reece about the affair . . . ." *Id.* Closely related is petitioner's third argument that he was denied his right to effective counsel when the trial court commented during cross-examination of Reece that it was "not going to let you continue to go after this lady." *Id.* Finally, petitioner argues that prosecutorial misconduct occurred when in closing argument the prosecutor asked the jury to "strongly consider" petitioner's prior felony conviction, misstated the burden of proof, mentioned petitioner's failure to call his brother as a witness, and repeatedly stated that he (the prosecutor) did not care about certain evidence.

**B. Standard of Review**

The standard of review of a 2254 petition depends upon whether the claim was adjudicated on the merits in state court. If the claim was adjudicated on the merits, a court should grant a habeas petition only if:

> the adjudication resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) was based upon an unreasonable determination of the facts in light of the evidence presented to the state courts.

*Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003).

A different standard applies to claims which were not adjudicated on the merits by state courts (i.e., procedurally defaulted claims):

> When a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available or due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review. A petitioner may avoid this procedural default only by showing that there was cause for the default and prejudice resulting from the default, or

>that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case.

*Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) (internal citations omitted). A claim is procedurally defaulted if a habeas petitioner has "failed to comply with a state procedural rule that is applicable to the petitioner's claim" and "the state courts actually enforced the procedural rule in the petitioner's case; and . . . the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis*, 351 F.3d at 744.

Some of petitioner's claims have been procedurally defaulted but others have not. Thus, the standard of review will be different for the procedurally defaulted claims. *See, e.g., Seymour*, 224 F.3d at 555-56 (reviewing non-procedurally defaulted claims on their merits while applying procedural default rules to defaulted claims).

### C. Exclusion of Testimony about Content of Letters

In its entirety, petitioner's first argument is as follows:

>9. Crossty was denied his constitutional right to due process of law when the trial court improperly excluded vital evidence supporting the defense that he acted out of extreme provocation rather than an intent to kill, and demonstrating that the state's chief witness lied under oath about the nature and extent of that provocation.
>10. More specifically, trial counsel was prevented from introducing graphic letters showing that the alleged victim, Carlena Reece, Defendant's long-time girlfriend and the mother of his children, was secretly having an affair with his childhood friend. Defendant was also prevented from testifying about the content of the letters. Defendant's discovery of such letters, combined with Reece's physical attack when he confronted her with them, formed the basis for his defense that he acted in sudden passion or in a sudden fit of rage which was provoked by the actions of the alleged victim.

Doc. 1, p. 2-3.

It is not the province of a federal habeas court to re-examine state court determinations on state law issues. *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Estelle v. McGuire*,

502 U.S. 62, 68 (1991)). Thus, a state court's ruling regarding the admissibility of evidence generally is not cognizable on federal habeas review. *See, e.g., Markham v. Smith*, 10 Fed. Appx. 323, 325 (6th Cir. 2001). An erroneous evidentiary ruling by a state court is only cognizable in federal habeas relief if the error denies a defendant "his fundamental right to a fair trial." *Id.* And even if an evidentiary error is treated as a due process error in a federal habeas petition, it is subjected to harmless error analysis whereby relief is mandated only if the error "had 'a substantial and injurious effect or influence on determining the jury's verdict.'" *Id.* (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

To the extent petitioner argues that the trial court's decision violated an Ohio evidentiary rule, his argument is not cognizable in this federal habeas petition. *Bey*, 500 F.3d at 519 ("a claim that the state trial court erred in the application of state law, specifically a ruling on evidence . . . is simply not cognizable on habeas review."). Petitioner argues in his habeas petition that the trial court's preventing him from testifying about the contents of the letters between Reece and White is a due process violation. Petitioner did not, however, frame his argument on due process grounds in his initial appeal,[4] nor did the Twelfth District discuss due process when it rejected petitioner's claim on direct appeal. *See* 2009 WL 1655495, at * 3. Petitioner first tersely raised due process in his brief to the Ohio Supreme Court.[5] Doc. 5-14.

---

[4]*See* Doc. 5-9 (brief on direct appeal); 5-11 (reply brief on direct appeal).

[5]"Merely using talismanic constitutional phrases like 'fair trial' or 'due process of law' does not constitute raising a federal constitutional issue." *Abshear v. Moore*, 546 F.Supp.2d 530, 537 (S.D. Ohio 2008). Petitioner's brief to the Ohio Supreme Court provided simply in relevant part that "Due process requires that Appellant be permitted to present relevant, admissible evidence to support . . . lesser offenses." Doc 5-14, p. 9. It could reasonably be concluded, therefore, that petitioner did not fairly present his due process claim to the state courts. Nevertheless, I will analyze petitioner's due process claims on the merits, as did respondent.

Even on the merits, however, petitioner has not shown an entitlement to habeas relief. Petitioner was able to testify that the letters showed Reece and White had engaged in a sexual relationship, and further testified about the graphic language Reece allegedly used to describe her previous sexual encounters with White.  *See* Doc. 5-7 (Trial Transcript III), p. 515-519.  It cannot be said, therefore, that the trial court's decision to prevent petitioner from testifying about the exact contents of the letters prevented petitioner from presenting his theory of why he became enraged at Reece, nor can a logical conclusion be drawn that the trial court's decision had a substantial effect on the jury's verdict.  *Markham*, 10 Fed.Appx. at 325.  Thus, petitioner is not entitled to habeas relief on this issue.

### D.  Limiting Cross-Examination of Reece

In its entirety, petitioner's second argument is as follows:

> 11. Crossty was denied his constitutional right to due process of law when the trial court improperly curtailed cross-examination of the state's primary witness regarding her admittedly false testimony at his preliminary hearing, where she denied the affair, and any knowledge of the reason for Crossty's anger.
> 12. More specifically, the trial court improperly terminated cross-examination of Reece about the affair that prompted her confrontation with Appellant, a subject that she admittedly lied about under oath during Appellant's preliminary hearing.  Appellant was also prejudiced by the trial court's statement, in the presence of the jury, that Reece was not on trial, and "I'm not going to let you continue to go after this lady."  These comments suggested that Crossty's counsel was acting improperly by subjecting the witness to vigorous cross-examination, and that hers [sic] prior lies under oath were not relevant or important.

Doc. 1, p. 3.

As with the previous issue, petitioner's claim is not cognizable in federal habeas review to the extent that it is based upon a perceived error in applying Ohio's evidentiary rules.  And, as with the previous issue, petitioner now frames this issue as a due process violation but did not do

so in his initial appeal. *See* Docs. 5-9 (brief on direct appeal); 5-11 (reply brief on direct appeal). The Ohio Twelfth District Court of Appeals also did not rely upon due process when it affirmed the trial court. 2009 WL 1655495, at *4-5. Petitioner did, however, tersely classify the curtailing of cross-examination as a due process violation in his brief to the Ohio Supreme Court. Doc. 5-14.[6]

Under the Sixth Amendment, a criminal defendant has the right to confront the witnesses against him. The primary interest secured by the Confrontation Clause is the right to cross-examine witnesses. *Davis v. Alaska*, 415 U.S. 308, 315 (1974) (citing *Douglas v. Alabama*, 380 U.S. 415, 418 (1965)). The right to cross-examination is not unlimited, however. A trial court has "wide latitude" to "impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). In other words, the Confrontation Clause only guarantees an opportunity for effective cross-examination; it does not guarantee unfettered cross-examination in whatever manner and to whatever extent a defendant may desire. *Id.* (citing *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)).

At trial, the following relevant exchanges occurred:

Q. I'm going to hand you what I've marked for identification purposes -- actually there's -- there are five documents here, and it is B-1, 2, 3, 4 and 5 and I'm going to show it to the prosecutor first.
THE COURT: Mr. Hardig, I don't want to cut your cross-examination short here

---

[6]As with the previous argument, it could reasonably be concluded that Petitioner's fleeting reference to due process in his brief to the Ohio Supreme Court was insufficient to deem that argument to have been fairly presented to that court. *Abshear*, 546 F.Supp.2d at 537. Nonetheless, I will discuss the issue on its merits, as did respondent.

>but you know this lady is not on trial, and unless you are going tie
>this up, to something that has to do with Mr. Crossty, I'm not going to let you just
>continue to go after this lady.
>MR. HARDIG: That's not my purpose, Your Honor. My purpose is she has --
>THE COURT: Let's go --
>MR. HARDIG: She has lied about the situation.
>THE COURT: Well give me some of that and I intend to let you proceed with
>cross-examination, but unless you are going to tie these letters up
>with -- by this defendant, then I just don't think it is relevant.
>MR. HARDIG: I am, Your Honor.
>THE COURT: Then let's get to it.
>MR. HARDIG: So I can't introduce the exhibit?
>THE COURT: If you are going to tie it up. And I want you to get to it.

Doc. 5-6, p. 79-80 (Transcript Vol. II, p. 244-45).

The Twelfth District Court of Appeals held that no error occurred because petitioner's counsel had not connected the letters between White and Reece to petitioner. And that court held that the content of the letters was irrelevant to the charges against petitioner. 2009 WL 1655495, at *5.

Petitioner has not shown how the state courts committed an error in this area. Petitioner was able to present evidence to the jury that Reece and White had exchanged letters and had engaged in sexual relations. Indeed, at one point during the cross-examination by petitioner's counsel Reece admitted she had lied under oath at a preliminary hearing when she had testified that she had not written letters to White. *See* Doc. 5-6, p. 83-84 (Transcript Vol. II, p. 249-50). And, as the Twelfth District Court of Appeals noted, petitioner did not lay a foundation directly linking the letters to the charges against him. Though petitioner perhaps was not permitted to cross-examine Reece to the wide-ranging extent he sought, he was able to establish that Reece: 1) had engaged in an affair with White; 2) had exchanged letters with White; and 3) had lied under oath at a preliminary examination about exchanging letters with White. Petitioner has not

shown how the trial court's decision to preclude detailed cross-examination about the precise contents of the letters was an error sufficient to violate his due process or Confrontation Clause rights. Thus, petitioner is not entitled to habeas relief on this issue.

### E. Trial Court's Comments

Closely related to the cross-examination issue is petitioner's contention that the trial court's statement that it was not going to let petitioner's counsel "continue to go after" Reece denied petitioner his right to effective counsel. Petitioner does not present a traditional ineffective assistance of counsel claim. Instead, petitioner asserts that the trial court's comments "had a chilling effect on counsel's efforts to effectively represent Crossty." Doc. 1, p. 3. In its entirety, petitioner's argument is as follows:

> 13. Crossty was denied his constitutional right to the effective assistance of counsel when the trial court repeatedly interfered with counsel's attempt to present vital evidence and admonished him in front of the jury for vigorously cross-examining the state's primary witness.
> 14. More specifically, the trial court's comments to defense counsel that Reece was not on trial, and "I'm not going to let you continue to go after this lady" had a chilling effect on counsel's efforts to effectively represent Crossty. Vigorous cross-examination of Reece was necessary to establish provocation, a defense where the burden of proof rested on defendant. Instead of permitting counsel to do his job, the trial court bolstered the testimony of the victim by improperly conveying to the jury and to counsel that Reece was being unfairly attacked.

Doc. 1, p. 3.

Respondent contends that petitioner has procedurally defaulted this issue because he did not fairly present it to the state courts. I agree.

Petitioner did argue in state court that the trial court's remarks were improper but did not argue that the trial court's comments had the effect of denying him his right to effective counsel. "Failure to present an issue to the state supreme court on discretionary review constitutes

procedural default." *Abshear*, 546 F.Supp.2d at 536. And "[i]f a petitioner's claims in federal habeas rest on different theories than those presented to the state courts, they are procedurally defaulted." *Id.* at 537. This argument, therefore, has been procedurally defaulted.

The question thus becomes whether petitioner has shown "cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default . . . ." *Seymour*, 224 F.3d at 549-50. To demonstrate a fundamental miscarriage of justice, a petitioner must show that he is actually innocent. *See, e.g., Jamison v. Collins*, 100 F.Supp.2d 647, 670 (S.D. Ohio 2000); *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (holding that "where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."). Petitioner's 2254 petition does not contain a showing that he is actually innocent.

Since petitioner has not shown that enforcing the procedural default will result in a miscarriage of justice, he must show both cause for the default and prejudice resulting from it. *See Murray*, 477 U.S. at 496. (explaining that cause and prejudice test is conjunctive, not disjunctive). Petitioner has shown neither cause nor prejudice.

Petitioner has not shown cause because he has not demonstrated that a factor external to his defense prevented him from complying with Ohio's procedural rules. *Id.* at 488 ("we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."). Petitioner has made no showing as to why he did not, or could not, raise this ineffective assistance of counsel argument in state court. Although his

13

failure to show cause for the procedural default is fatal to his claim, I also briefly note that petitioner has also not shown prejudice.

A petitioner shows prejudice by showing that an error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). In order to demonstrate prejudice, therefore, a petitioner must show a reasonable probability that the outcome of his trial would have been different. *See, e.g., Wright v. Lazaroff*, 643 F.Supp.2d 971, 988 (S.D. Ohio 2009) (citing *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003)). Petitioner's terse petition does not show how the outcome of his trial would have been different. Thus, he has not shown prejudice.

Petitioner, therefore, is not entitled to habeas relief based upon the trial court's comments.

**F. Prosecutorial Misconduct**

Petitioner's final argument is again based upon a purported due process violation, this time due to alleged prosecutorial misconduct during closing argument. In its entirety, petitioner's argument is as follows:

> 15. Crossty was denied his constitutional right to due process of law when the prosecutor was permitted to interject personal opinion, misstatements of the law, and other improper comments in closing argument and the court overruled defense counsel's objection and motion for new trial.
> 16. More specifically, during final argument, the prosecutor instructed the jury to "strongly consider" appellant's previous felony conviction as evidence of guilt, and misstated the burden of proof by claiming that Defendant must "convince you that what he did that day was okay." He later mentioned that appellant failed to call his brother as a witness, thus reinforcing the idea that Appellant had the burden of proof. Finally, he repeatedly injected his personal opinion into the argument, and repeatedly told the jury that he didn't care about the defense evidence or that it "didn't matter."

Doc 1, p. 4.

14

Respondent argues that portions of this argument have been procedurally defaulted.  I agree.

When petitioner raised his prosecutorial misconduct arguments on direct appeal, the Twelfth District Court of Appeals found that petitioner's counsel had contemporaneously objected to the prosecutor's urging the jury to "strongly consider" petitioner's previous felony conviction.  However, that court found that petitioner's counsel "failed to object to the remaining complaints against the prosecutor; waiving any challenge except for plain error."  2009 WL 1655495 at *6.[7]

Ohio "has a contemporaneous objection rule, and . . . the Ohio courts treat the failure to object to a claimed error as a procedural default."  *Knuckles v. Rogers*, 983 F.2d 1067, at *2 (Table) (6th Cir. 1993).  This type of procedural default "is an adequate and independent state ground upon which the state court based its decision."  *Evans v. Mitchell*, 344 Fed.Appx. 234, 243 (6th Cir. 2009).  And "[c]ontrolling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules."[8]  *Seymour*, 224 F.3d at 557.  Thus, petitioner's claims that the prosecutor engaged in reversible misconduct by injecting his personal opinions, commenting upon petitioner's failure to call his brother as a witness, and allegedly misstating the burden of proof have each been procedurally defaulted.  As with his previous procedurally defaulted claims, petitioner's terse petition does not contain a showing of cause or

---

[7]Petitioner conceded the general lack of objections in his reply brief before the Twelfth District Court of Appeals, stating that "[i]t is true that Appellant's counsel did not object to most of the prosecutor's improper remarks."  Doc. 5-11, p. 9.

[8]The Twelfth District Court of Appeals found plain error relief was not mandated because the comments of the prosecutor, though improper, did not affect the outcome of the trial.  2009 WL 1655495, at * 7.

prejudice,[9] nor has petitioner shown that enforcing the procedural default would result in a miscarriage of justice.

The only remaining portion of this prosecutorial misconduct claim, therefore, is petitioner's assertion that he is entitled to habeas relief because the prosecutor twice during closing argument urged the jury to consider "strongly" petitioner's previous felony conviction.[10] The Twelfth District Court of Appeals found that the trial court's admonition adequately removed any prejudice from the prosecutor's statement, holding that:

> While we agree that the previous conviction may only be considered for a limited purpose, the trial court properly limited the evidence by issuing a curative instruction. Although the instruction was not provided directly after counsel's objection, the court specifically instructed the jury on the limited relevancy of prior convictions immediately following closing arguments in the jury instructions.

2009 WL 1655495 at *6.

Because this claim was adjudicated on the merits in state court, petitioner bears the burden to show the state court's decision to be "contrary to, or . . . an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) . . . based upon an unreasonable determination of the facts in light of the evidence . . . ." *Willis*, 351

---

[9]"Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced." *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006). Petitioner does not even present conclusory cause and prejudice-based assertions.

[10]At one point during closing argument, the prosecutor stated "You consider that when you test his credibility that man, like anybody else that testified for the last two days, is a convicted felon and consider it strongly." Doc. 5-7, p. 124 (Transcript III, p. 606). Later in closing argument, the prosecutor stated: "I am asking you to consider throughout the entire time that you do that, that out of everyone else, the man is a convicted felon, and consider that strongly when you assess his credibility." *Id.* at p. 176 (Transcript III, p. 658).

F.3d at 744.

The trial court instructed the jury that arguments of counsel were not evidence[11] and that the jury could only consider petitioner's previous felony conviction to determine his "believability . . . ." Doc. 5-8, p. 8 (Jury Instruction and Verdict transcript, p. 667). Petitioner has not shown how the prosecutor's statements that the jury should consider "strongly" petitioner's felony conviction was misconduct so "flagrant as to render the entire trial fundamentally unfair[,]" as is required for habeas relief based upon a claim of prosecutorial misconduct. *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2002). Even if it is assumed, for purposes of argument, that the remarks were improper, they were isolated, the evidence against defendant was overwhelming,[12] and the trial court instructed the jury as to the proper uses for the prosecutor's closing argument and petitioner's felony conviction. Thus, petitioner has not shown that his trial was fundamentally unfair or that the state court's decision to deny relief was "an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) . . . based upon an unreasonable determination of the facts in light of the evidence . . . ." *Willis*, 351 F.3d at 744.

### III. Conclusion

For the foregoing reasons, it is **RECOMMENDED:**

1. Petitioner's 28 U.S.C. § 2254 petition should be **denied**; and

---

[11]*See* Doc. 5-8, p. 5 (Jury Instruction and Verdict transcript, p. 664) ("The opening statements and closing arguments of counsel are designed to assist you. They are not evidence.").

[12]The Twelfth District Court of Appeals relied, in part, on the fact that "overwhelming evidence was presented to support appellant's convictions" to deny plain error relief on petitioner's claim of prosecutorial misconduct. 2009 WL 1655495, at * 7.

  2.  A certificate of appealability should not issue with respect to any claim alleged in the petition, because no claim for relief states a "viable claim of the denial of a constitutional right" or presents issues that are "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b); and

  3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis* from any order adopting the undersigned's Report and Recommendation to deny habeas corpus relief on claims alleged in the petition, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of such order would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

  This the 18th day of March, 2011.

              s/ J. Gregory Wehrman
              J. Gregory Wehrman
              United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**
**AT CINCINNATI**
**CIVIL CASE NO. 10-759-SSB-JGW**

**JULIUS CROSSTY**                                                                                    **PETITIONER,**

**V.**

**WARDEN, LEBANON CORRECTIONAL**
**INSTITUTION**                                                                                          **RESPONDENT.**

**NOTICE**

      Attached hereto is the Report and Recommendation Decision of the Honorable J. Gregory Wehrman, United States Magistrate Judge.  Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations **within 14 days** after being served with this Report and Recommendation.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  A party may respond to another party's objections **within 14 days** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).